UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAMTRAMCK HOUSING COMMISSION,

        Plaintiff,

v.

SIEMENS INDUSTRY, INC., and
SIEMENS BUILDING TECHNOLOGIES,
INC.,

        Defendants.
_____/

Case No. 2:24-cv-13354

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS (ECF No. 8)**

In 2008, Plaintiff Hamtramck Housing Commission (HHC)—a public housing authority (PHA)—selected Defendant Siemens Industry, Inc ("Siemens")[1] to conduct an energy-consumption audit of HHC's facilities to determine whether HHC was a suitable candidate for participating in an energy performance contract (EPC) with Siemens to cut utility costs. After Siemens audited the facilities, established energy baselines from the facilities' historical utility-usage data in the audit, and concluded that HHC was a good candidate, the parties entered a 15-year

---

[1] "Siemens Building Technologies, Inc. has been merged into Defendant Siemens Industry, Inc. and no longer separately exists." ECF No. 1 at PageID.2. Accordingly, the two named defendants are the same entity.

EPC in 2011 with approval from the Department of Housing and Urban Development (HUD). In exchange for HHC purchasing equipment from Siemens through an interest-bearing loan, Siemens agreed to pay HHC any annual "savings shortfall" if HUD's utility subsidies and HHC's energy savings did not fully cover the costs of the loan's principal and interest.

In this case, HHC claims that Siemens committed misrepresentations in its audit and breached the contract in its sixth year by unilaterally modifying the baselines used to calculate the annual utility usage and savings shortfalls. Siemens has moved to dismiss, arguing that HHC's claims are time-barred under the statute of limitations and, even if timely, HHC's misrepresentation claims fail for lack of specificity.

As explained below, HHC's breach-of-contract claim is not time-barred and will be allowed to proceed. However, HHC's misrepresentation claims are barred by the statute of limitations. Therefore, the motion will be granted as to those the misrepresentation claims only.

## I. BACKGROUND

The following factual allegations come from HCC's complaint. ECF No. 1-1. At the motion-to-dismiss stage, these facts must be accepted as true with all reasonable inferences drawn in HCC's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). Beyond the pleadings, this Court also may consider documents

that are public record or that are referred to in the pleadings that are integral to the claims, such as the EPC itself. *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

HHC is a public housing authority that operates two facilities for low-income residents: Senior Plaza and Colonel Hamtramck. ECF No. 1-1 at PageID.11. As a participant in HUD's program to provide public housing, HHC has access to HUD capital funding that "substantially pays for capital improvements of [participant facilities] when reasonably necessary . . . [for] utility-related equipment, appliances and systems." *Id.* at PageID.29. HUD also "substantially subsidizes utility costs for PHAs on an annual basis." *Id.* at PageID.11. In the 2000s, HUD began encouraging PHAs to enter EPCs, i.e., "a financing technique that uses energy/electricity cost savings from reduced energy consumption to" offset costs of installing energy-saving equipment. *Id.*

In August 2007, "HHC issued a request for proposals" to establish an EPC, to which Siemens responded in January 2008. *Id.* at PageID.11–12. Siemens then conducted "an investment grade energy audit" of HHC's facilities to determine whether HHC was a suitable candidate for an EPC. *Id.* at PageID.12. Siemens determined HHC's utility consumption for the three previous years to establish the facilities' energy-consumption baselines. *Id*. Although Siemens stated that it conducted an independent analysis of HHC's raw utility data, *id.* at PageID.12–13,

it was later revealed that the data came from HHC's third-party service-provider who had prepared HHC's annual utility-expense reports. *Id.* at PageID.17.

On the basis of this audit, Siemens proposed a 15-year EPC with HHC. *Id.* at PageID.13. HUD approved the proposed EPC on November 23, 2010, and expressly approved the energy-consumption baseline incorporated into the EPC. *Id.* The EPC included a provision in which only the Contracting Officer—Kevin Kondrat, HHC's Executive Director—could make changes to the EPC. ECF No. 8-4 at PageID.262, 293, 328. "[O]n or about January 17, 2011," the parties entered the EPC. ECF No. 1-1 at PageID.14.

The EPC included a 15-year "interest bearing bank loan" with which HHC purchased various "energy-related equipment, appliances and systems" from Siemens to reduce utility expenses. *Id.* at PageID.13. The contract purchase price was $2,470,268.00. *Id.* In exchange, Siemens was to pay HHC annually any "savings shortfall" in which "HUD's utility subsidy to the HHC plus the energy cost savings experienced by the HHC as a result of the performance of the [purchased equipment] did not fully cover the HHC's principal and interest on the bank loan" for the equipment. *Id.* at PageID.14. In other words, Siemens agreed to pay HHC any shortfall amount if HHC did not save the guaranteed amount with the new equipment and baseline calculations. *Id.* Siemens would identify any shortfalls in its annual reports to HHC. *Id.*

- 4 -

For the first five annual reports, Siemens used the baselines established in the initial audit. *Id.* However, in the sixth report, HHC alleges that Siemens unilaterally modified the baselines without the contracting officer's approval and used the modified baselines in the sixth and seventh-year reports. *Id*. at PageID.15. After the seventh year, HHC challenged the calculations as allowed under Section 31 of the EPC, resulting in a decision in HHC's favor on June 30, 2020. *Id.*[2] HHC further alleges that, despite that decision, Siemens continued to rely on the modified values in the subsequent reports for years eight, nine, and ten. *Id*. at PageID.15–16.

In its year ten report, Siemens included an appendix with corrections to the reports from years one through nine. *Id.* at PageID.16. That appendix explained that the data that had been used to establish the initial baselines "was flawed due to inaccurate reporting by the utility company and misallocations by HHC." *Id.* at

---

[2] For additional procedural history in Siemens' motion, not considered but provided for context, Siemens recounts that HHC's director and program manager then brought a *qui tam* action against Siemens on March 16, 2021. ECF No. 8 at PageID.123. The director and manager alleged that Siemens deliberately overstated the water value to secure a higher level of government funding. *Id.* In 2024, Siemens settled without admitting liability. *Id.*; *see United States et al. v. Siemens Corp. et al.*, No. 2:21-cv-10594, slip op at 1–2 (E.D. Mich. Mar. 16, 2021) (ordering a dismissal of the case "for the purpose of effectuating a settlement agreement").

PageID.17.[3] Siemens eventually issued a letter to HHC on July 27, 2023, terminating the EPC. *Id.* at PageID.16.[4]

HHC claims that Siemens' modification of the baselines was a breach of contract for "failing to use contractually required, HUD approved baseline consumption values" and for modifying these values unilaterally instead of through the Contracting Officer who, according to Section 28 of the EPC, has sole authority to modify the contract. *Id.* at PageID.14–15. Because of this alleged breach—and other "unit conversion errors"—HHC argues that Siemens owes HHC savings shortfalls from years 1 through 10 that would have been reported if the original baselines were used. *Id.* at PageID.15–16. HHC also claims that the savings shortfalls are reasonably foreseeable and calculable for years 11 through 15 in the amount of $948,216.00. *Id.* In total, HHC seeks $1,620,886.00 for the savings shortfalls. *Id.* at PageID.20.

---

[3] For context, Siemens describes its conduct in its motion to dismiss as follows: In 2023, Siemens commissioned an independent review of the water values in relation to the *qui tam* action "in which it found that the raw water-consumption data that HHC had provided . . . had been inaccurately reported to HHC by the water utility company and had been misallocated by HHC across its two housing facilities." ECF No. 8 at PageID.123–24. These inaccuracies created an inflated baseline and higher subsidy payments for the first nine years of the EPC. *Id.* at 124.

[4] For context, Siemens explains in its motion to dismiss that the termination occurred because Siemens prepared a corrected baseline and calculated approximate utility usage and savings for the first 10 years of the EPC, which HHC rejected. ECF No. 8 at PageID.124. Therefore, Siemens issued a termination letter because the EPC was "based on false information" such that Siemens asserted that the EPC could not be legally performed. *Id.*

HHC further claims—albeit imprecisely—that Siemens committed a fraudulent or negligent misrepresentation of the baseline values in the audit by failing to exercise due diligence to discover the errors in HHC's initially provided utility data. *Id.* at PageID.17, 21. Specifically, HHC states that rather than perform its own independent analysis of HHC's raw utility data, Siemens "simply relied upon the existing submissions in arriving at its audit findings." *Id.* In this way, HHC appears to allege that Siemens could or should have discovered the flawed historical data during the audit if it had exercised due diligence, and that Siemens breached its "fiduciary duty of honesty in fact" to provide an accurate audit or to inform HHC of the audit's errors sooner. *Id.* at PageID.18.

HHC also asserts that the audit baselines utilized in each annual report were representations that Siemens knew were false or recklessly presented without verifying their veracity. *Id.* at PageID.18, 21, 23. HHC claims that HUD would not have approved the EPC with the corrected baselines and "HHC would never have been induced to purchase" the utility equipment through a loan. *Id.* at PageID.17–19, 22. For the misrepresentation claims, HHC seeks damages in the amount of the bank loan's principal and interest: $3,514,395.00. *Id.* at PageID.19, 22–23. HHC also calculates that Siemens owes HHC $672,671.00 in savings shortfalls from the first 10 years of the EPC. *Id.* at PageID.16.

HHC sued Siemens in state court on September 5, 2024, and Siemens removed the case to this Court on December 16, 2024. ECF Nos. 1, 1-1. Siemens filed a motion to dismiss for failure to state a claim both on the merits and in light of the statute of limitations. ECF No. 8. In its response, ECF No. 10, HHC provides clearer factual allegations and context; but because the new information is not in the original complaint, this Court may not consider it. *See VCST Int'l B.V. v. BorgWarner Noblesville, LLC*, 142 F.4th 393, 399 (6th Cir. 2025) (reiterating that courts may only consider "the 'four corners' of the complaint," and other limited documents, on motions to dismiss). Siemens replied to HHC's response, arguing that HHC improperly attempts to salvage its complaint by repleading. ECF No. 11 at PageID.615.

## II. LEGAL STANDARDS

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert*, 517 F.3d at 439. The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). The complaint is facially plausible

if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). Otherwise, the Court must grant the motion to dismiss. *Twombly*, 550 U.S. at 570.

Although "a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon on the statute of limitations . . . sometimes the allegations in the complaint affirmatively show that the claim is time barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542 (6th Cir. 2012). Thus, [i]f the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]" *Jones v. Bock*, 549 U.S. 199, 215 (2007).

### III. DISCUSSION

#### A. Breach of Contract

Siemens argues that HHC's breach-of-contract claims must fail because HHC does not specify a particular provision of the EPC that Siemens breached. ECF No. 8 at PageID.126, 128–29. Alternatively, Siemens argues that HHC's claim is barred by the statute of limitations because the only plausible date for a breach under the facts as HHC presents them in its complaint, would be the execution of the contract

itself in 2011 with the incorrect baselines. *Id.* at PageID.126. Each of these bases for dismissal will be addressed in turn.

*1. Merits*

HHC's complaint is, undeniably, disorganized and lacks factual detail at points. Nonetheless, the complaint offers sufficient factual content to permit this Court to reasonably infer a plausible breach-of-contract claim, which is all that is required at this stage. *See Iqbal*, 556 U.S. at 678.

To state a claim for breach of contract under Michigan law, a claimant's pleadings must include facts that plausibly demonstrate: "(1) there was a contact; (2) which the other party breached; and (3) thereby resulting in damages to the party claiming breach." *Acrisure, LLC v. Hudak*, 618 F. Supp. 3d 642, 647 (W.D. Mich. 2022) (quoting *El-Khalil v. Oakwood Healthcare, Inc.*, 504 Mich 152, 164 (2019)).

First, HHC's complaint establishes that there was a contract between HHC and Siemens that was approved by HUD in 2010 and executed in 2011. ECF No. 1-1 at PageID.12–14. *See Acrisure, LLC*, 618 F. Supp. 3d at 647. Although HHC did not include a copy of the EPC in its complaint, "[w]here the claims rely on the existence of a written document, and plaintiff fails to attach the written instrument, 'the defendant may introduce the pertinent exhibit,' which is then considered part of the pleadings." *Travis v. ATD Sec. Servs, Inc.*, 884 F. Supp. 2d 629, 634 (E.D. Mich. 2012) (quoting *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D.

Mich. 2003)); *see also Blackwell v. Nocerini*, 123 F.4th 479, 487 (6th Cir. 2024) ("[A] plaintiff who asserts a breach-of-contract claim cannot prohibit a district court from considering the whole contract . . . merely by omitting the contract from the complaint."). Because Siemens introduced the EPC as an exhibit in its motion to dismiss, ECF No. 8-4, this Court concludes that there was an established contract between the parties. *See Travis*, 884 F. Supp. 2d at 634.

Second, despite Siemens arguing that HHC's complaint fails to expressly allege that Siemens breached Section 28 of the EPC, HHC's complaint offers enough facts that, when accepted as true, demonstrate a sufficient allegation that Siemens breached this provision. *See Lambert*, 517 F.3d at 439; *see also Bell At. Corp.*, 550 U.S. at 555. Specifically, HHC's complaint alleges:

> 36. In what purported to be its Annual Report for Year 6 of the [EPC] (the "Year 6 Report"), Siemens breached the [EPC] by failing to use contractually required, HUD approved baseline consumption values in making its energy saving reconciliation, but, rather, used values unilaterally determined by Siemens.
>
> 37. Section 28 of Exhibit D of the [EPC] provides that "Only the Contracting Officer has authority to modify any term or condition of this contract (the [EPC])."
>
> 38. At no time did the Contracting Officer under the [EPC] authorize any such contract modification.

ECF No. 1-1 at PageID.14–15.

Section 28(a) of the EPC does, in fact, indicate that "[o]nly the Contracting Officer has authority to modify any term or condition or this contract." ECF No. 8-

4 at PageID.328. The named Contracting Officer in the EPC is HHC's Executive Director Kevin Kondrat, not Siemens. ECF No. 8-4 at PageID.262. Therefore, drawing all reasonable inferences in the HHC's favor, this Court can infer that HHC's claim asserts that Siemens breached Section 28 of the EPC by modifying the baseline values in the year six report without the Contracting Officer's authorization. *See Lambert*, 517 F.3d at 439.[5] However, to the extent that HHC frames Siemens' use of unapproved baselines as a distinctive breach, this claim is not distinguishable from the claim that Siemens breached the contract by modifying the baselines. Given that modification of the baselines necessarily altered what values were used in the annual utility-consumption calculations, a general breach for modification—and use therein—is a more appropriate presentation of HHC's complaint.

Accordingly, HHC's complaint satisfies the second element for a breach-of-contract claim. *See Acrisure, LLC*, 618 F. Supp. 3d at 647.

---

[5] HHC's response to the motion to dismiss includes other arguments with greater specificity, such as allegations that Siemens breached specific provisions like § 50.6.2 of the EPC obligating payment of savings shortfalls. ECF No. 10 at PageID.534. Because this Court is restricted in motions to dismiss to consider only "the 'four corners' of the complaint"—and the limited list of other materials, which do not include responses to motions to dismiss—this Court has aimed to address HHC's claims as presented in its complaint without the clarity and additional arguments provided in the response that ought to have been included in the initial, or an amended, complaint. See *VCST Int'l B.V*, 142 F.4th at 399. Furthermore, additional parsing of the EPC's individual years, issues of damages, and other such nuances "involves investigation into a variety of facts . . . [and] [t]his Court cannot conduct this type of factual inquiry on a motion to dismiss." *Buntea v. State Farm Mut. Auto Ins. Co.*, 467 F. Supp. 2d 740, 749–50 (E.D. Mich. 2006).

Third, HHC alleges damages for the loss of guaranteed savings shortfalls that would have accrued had Siemens not modified the baseline values. ECF No. 1-1 at PageID.15. This is a plausible, compensatory damage flowing from the alleged breach of the EPC. *See Acrisure, LLC*, 618 F. Supp. 3d at 647. Thus, HHC's complaint, though "not a model of clarity, . . . provided sufficient notice to [Siemens] on the basis of [its] breach of contract claim." *Scott v. Bank of Am.*, No. 12-12864, 2013 WL 5353231 at *3 (E.D. Mich. May 30, 2013).

### 2. Statute of Limitations

Siemens alternatively argues that HHC's breach-of-contract claim is barred by the statute of limitations because the basis for HHC's claim is either (1) the inaccurate audit performed in 2008 or (2) the 2011 execution of the EPC based upon the inaccurate audits. ECF No. 8 at PageID.8. But—despite Siemens' characterization of the factual timeline—HHC's complaint clearly alleges that the first instance of a breach was Siemens' modification of the baseline values in the year six report. ECF No. 1-1 at PageID.14.

Under Michigan Law, breach-of-contract claims are subject to a six-year statute of limitations. *See* Mich. Comp. Laws § 600.5807(9). The six years begins accruing "at the time the wrong upon which the claim is based was done regardless of the time when damages results." Mich. Comp. Laws § 600.5827.

Neither HHC in its complaint nor Siemens in its motion to dismiss specified the date at which Siemens issued the year six report. However, HCC's response indicates that Siemens issued the report on September 5, 2018, ECF No. 10 at PageID.534, which is verifiable through the attached report. ECF No. 10-4 at PageID.563; ECF No. 10-5 at PageID.599. This Court may consider this report because the document is central to HHC's claim that Siemens breached the EPC through the year six report. *See Travis*, 844 F. Supp. 2d at 634. Since HHC filed its complaint on September 5, 2024, HHC's breach-of-contract claim, starting in year six, just barely survives the limitations period. *See* Mich. Comp. Laws §§ 600.5807(9), 600.5827. However, if, in its less-than-clear complaint, HHC is attempting to assert any breach-of-contract for years 1 through 5, such claims are barred by the statute of limitations. *See id.*

### B. Misrepresentation

HHC also claims that Siemens fraudulently or negligently made misrepresentations in the audit by breaching its duty to exercise reasonable care and due diligence regarding the accuracy of the historical data used to establish baselines. ECF No. 1-1 at PageID.23.

To prevail on either a fraudulent or negligent misrepresentation claim, the claim must be brought within six years after "the wrong upon which the claim is based was done regardless of the time when damage results." Mich. Comp. Laws §

600.5827. *See also* Mich. Comp. Laws § 600.5813. The Michigan Supreme Court clarified that for causes of action involving fraud or negligent misrepresentation, the period of limitations begins when the wrong occurred, not when the wrong was discovered. *Boyle v. Gen. Motors Corp.*, 468 Mich. 226, 230–32 (2003). However, if the potential wrongdoer "fraudulently conceals the existence of the claim or the identity of any" liable persons, then the person entitled to sue may do so within two years after the person "discovers, or should have discovered," the claim or liable persons. Mich. Comp. Laws § 600.5855.

Here, the statute of limitations bars HHC's misrepresentation claims. HHC clearly asserts that Siemens' misrepresentations were in the audit, which "induced" HHC to enter the contract. ECF No. 1-1 at PageID.17–19, 21–23. For example, HHC frames Counts II and III as follows:

> 78. As set forth above, in the Audit, Siemens made the Audit Representations set forth above in order to induce the HHC to enter into the [EPC.]
>
> * * *
>
> 80. As now admitted by Siemens in its Year 10 Report, each of the Audit Representations were <u>false</u>.
>
> 81. At the time Siemens made the Audit Representations to the HHC, Siemens knew they were <u>false or</u> made the representations <u>recklessly</u>, without knowledge of the truth of same, and as positive assertions.
>
> 82. Siemens made the Audit Representations with the <u>intention</u> that the HHC should act upon same and purchase

>   $2,470,268.00 worth of equipment, appliances and systems from Siemens (the ["]FIMs").
>
>   83.  The HHC acted <u>in reliance</u> upon the Audit Representations in purchasing the FIMs from Siemens.
>
>   * * *
>
>   89.  In performing the Audit and incorporating the Audit's findings into the [EPC], Siemens undertook a duty to the HHC to prepare the information, including, without limitation, the HHC's energy usage information, contained therein with reasonable care.
>
>   * * *
>
>   91.  As noted in Count II, above, the HHC relied upon Siemens's representations to its detriment in that, but for these false representations, the HHC would never had incurred the $2,470,268.00 in bank debt principal to finance the purchase of Siemens' equipment .
>   . . .
>
> *Id.* at PageID.21, 23.

Given that all these alleged misrepresentations were within the 2008 audit and that the contract was executed in January 2011, more than six years have elapsed since either date at which the alleged wrong could have occurred. *See* Mich. Comp. Laws § 600.5813; *see also Boyle*, 468 Mich. at 230–32. Because HHC raises no claims that Siemens further concealed liability, the more charitable discovery-based timeline under § 600.5855 is not applicable. Therefore, HHC's misrepresentation claims must be dismissed. *See Jones*, 549 U.S. at 215.

In sum, Siemens' motion will be granted to the extent it seeks dismissal of Counts II and III, but denied to the extent that Siemens seeks dismissal of Count I. Thus, only HHC's breach of contract claim will proceed to discovery.

### IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 8, is **GRANTED IN PART** and **DENIED IN PART**.

The Motion is **DENIED** as to Count I (Breach of Contract) and **GRANTED** as to Counts II and III (Fraudulent or Negligent Misrepresentation), which are **DISMISSED WITH PREJUDICE**.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: September 11, 2025